UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN LEWIS RICHARDSON,

            Petitioner,                    Case No. 18-11024

v.

                                        Stephanie Dawkins Davis

ANTHONY STEWART,               U.S. District Judge

            Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR
A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND
<u>GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>**

Alvin Lewis Richardson, (alternately "Petitioner"), currently on parole with

the Lincoln Park Parole Office, in Lincoln Park, Michigan, filed a *pro se* petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his

convictions for identity theft, Mich. Comp. Laws § 445.65(1)(a)(i), and obtaining

or possessing personal identifying information of another with the intent of

committing identity theft, Mich. Comp. Laws § 445.67(d).  Richardson was

sentenced as a habitual offender to 14 months to five years' imprisonment.  Having

reviewed the habeas petition, the warden's response, and the state-court record, the

Court concludes that the state courts reasonably found that Richardson's claims are

procedurally defaulted or without merit.  The Court will thus **DENY** the petition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On September 10, 2011 at approximately 8:30 p.m.,
> Detective Greg Morabito was on patrol in a fully marked
> patrol car at the Utica Home Depot when he noticed a
> white Ford Escort pull into the parking lot. The car
> parked a distance from the store even though it was not
> crowded, which Morabito found suspicious. There were
> three occupants in the vehicle. Morabito observed that
> the individuals were looking at him, causing him to
> become more suspicious because "that's a pretty good
> indication that more things are going to happen."
> Morabito pretended as though he was leaving the parking
> lot but parked where he could watch the car. Two of the
> occupants—the driver and the backseat passenger—got
> out of the vehicle. Morabito subsequently identified
> defendant as the driver. The individuals went into the
> store and Morabito approached the vehicle. The third
> individual was shuffling his legs around and Morabito
> could see a bag under his legs that looked like it had
> high-end plumbing supplies, including replacement
> cartridges. The passenger identified himself as Anthony
> Garland.
>
> As Morabito spoke with Garland, the other two
> individuals exited the store. When Morabito began to
> approach them, defendant returned inside the store. The
> other individual, later identified as "Simmons," walked
> past as if they were not together. Morabito confronted
> defendant in the lobby and asked him to step outside.
> Defendant provided his name and told Morabito that he
> had absconded from parole. At that point, Morabito was
> required to arrest defendant. Defendant was placed under
> arrest because of his status and because he was driving

on a suspended license; he was not arrested for anything that occurred on September 10, 2011. Morabito conducted a search incident to arrest and found a driver's license belonging to Robert Hayes in defendant's wallet. Morabito indicated that he found several return receipts and some of those refunds were attributable to Simmons and Garland. Simmons had been carrying a bag out of the Home Depot. Nevertheless, Simmons and Garland were released at the scene.

Robert Hayes testified that he was a self-employed "transportation expediter" and lived in Grosse Pointe. In the early spring of 2011, Hayes noticed that his driver's license was missing. He did not carry a wallet and generally just kept his license in his pocket. After backtracking and retracing his steps failed to recover the lost license, Hayes ultimately applied for and received a replacement license. Hayes never gave anyone his license and never allowed anyone to use the license to facilitate refunds at Home Depot.

Jeremy Greenleaf's responsibility at Home Depot was to investigate organized retail crime and financial crimes. Greenleaf explained that a refund could be done at any Home Depot with or without a receipt. If an individual had the receipt, then the original form of payment was returned. If an individual did not have a receipt, then he would get store credit if he presented ID. The clerk would input the driver's license into the computer system. The individual would also have to sign for the refund, but the clerk processing the refund would not be able to see the signature. Home Depot only permitted a certain number of returns without a receipt and then the ID would be flagged as "Log Attempted," which meant that the individual seeking to make the return would not be able to do so.

In September 2011, Greenleaf was contacted by Morabito. Greenleaf investigated defendant's return history and learned that, as of September 2, 2011,

> defendant was no longer permitted to return merchandise without a receipt. Greenleaf had business records documenting defendant's returns from June 2011. The returns were at various Home Depots and were generally for faucet repair kits. Greenleaf located documents for a return on September 2, 2011. The driver's license presented belonged to Hayes. There was also a video that went along with the transaction that was played for the jury.

*People v. Richardson*, No. 314245, 2016 WL 1680392, at *1-2 (Mich. Ct. App. Apr. 26, 2016).

The Court adds additional facts from the testimony of Det. Morabito, of the Utica Police Department.  Morabito was a patrol officer during the time in question.  (ECF 13-13, PageID.552-553).  He testified that when he arrested Richardson as a parole absconder, he searched him and found the driver's license of another individual, Robert Hayes (Hayes), on his person.  (*Id.* at 562).  Morabito then contacted Jeremy Greenleaf.  Jeremy Greenleaf testified that he was working as a corporate investigator for Home Depot on September 12, 2011.  Greenleaf testified that he was contacted by Det. Morabito who requested the video and provided the names of Alvin Richardson (petitioner), Anthony Garland, and Robert Hayes.  Greenleaf further testified that he did a refund history search with a drivers' license belonging to Hayes and an ID belonging to petitioner.  (ECF 13-7, Page ID.297-298).  Petitioner had several refunds and was no longer allowed to return items without a receipt.  He also found a refund transaction for Robert

Hayes at the Macomb Home Depot, which has video surveillance at the registers. Greenleaf testified that he pulled the surveillance video which depicted the transaction. Det. Morabito viewed the video of the Hayes refund and identified petitioner as the person requesting the refund. (*Id.* at 300-302, ECF 13-14, 631-632). Richardson is seen returning items on September 2, 2011, with a driver's license belonging to Robert Hayes. (ECF 13-14, PageID.624-627). Eight days later, Morabito testified that he arrested Richardson under suspicious circumstances at a different Home Depot store, with Hayes' driver's license in his possession. (ECF 13-13, PageID.553-554, 562-563).

Richardson's conviction was affirmed by the Michigan Court of Appeals. *lv. den.* 500 Mich. 933 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

1.     Testimony by Detective Morabito invaded the fact-finding province of the jury.

2.     Denial of a fair trial where the trial court judge improperly instructed the jury.

3.     Denial of a fair trial when petitioner was not present at a critical stage of the proceedings.

4.     Failure to be sentenced based on accurate information.

5.    Failure to be read his *Miranda*[1] rights or fingerprinted upon arrest.

6.    Ineffective assistance of trial counsel.

7.    Trial court committed reversable error by allowing an illegal arrest to stand and failure to bring petitioner before a magistrate judge for arraignment within 100 days of arrest.

8.    Speedy Trial violation.

9.    Due Process violation under the Sixth and Fourteenth Amendments when the judge's father came out of retirement just to deny petitioner's motion.

10.   Prosecutor's withholding of three (3) videos constituted a *Brady*[2] violation.

11.   Petitioner was denied the choice of a bench trial.

12.   Shackling during trial violated petitioner's due process rights.

13.   Trial counsel was ineffective for failing to:

a.    Investigate/interview potential witnesses and file a motion to suppress.

b.    Raise or challenge the arraignment.

c.    Request an evidentiary hearing regarding the video evidence.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

      d.     Effectively cross-examine, impeach, or object to the false

testimony of the prosecution witnesses.

14.    Petitioner was denied due process when detained 30 days before his

arraignment.

15.    Lack of subject-matter jurisdiction when complaint was not signed by

complainant.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

which governs this case, "circumscribe[s]" the standard of review that federal

courts apply when considering an application for a writ of habeas corpus raising

constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Under the

statute, a federal court may not grant habeas relief to a state prisoner with respect

to any claim that has been "adjudicated on the merits in State court proceedings"

unless the state-court adjudication "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if

the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A decision is "certainly contrary" to federal law where the "state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 406.

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407-08).  The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410).  Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.   DISCUSSION

### A.    Claim # 1. The admission of lay opinion testimony concerning petitioner's identification.

Petitioner first contends that the trial court erred by permitting Detective Morabito to invade the fact-finding province of the jury when he identified a

person on a video as petitioner, because the jury could have looked at the video without this prior fact-finding by the prosecutor's witness.

The Michigan Court of Appeals rejected petitioner's claim as follows:

> At trial, Morabito testified that Greenleaf provided him with videos and documents related to returns made by defendant or with Hayes' driver's license.  Morabito watched a September 2, 2011 surveillance video from Home Depot showing defendant returning items utilizing Hayes' driver's license.  The prosecutor asked Morabito if he could identify the person on the video and Morabito responded, "Yes, I see Mr. Richardson in the video." The video was played for the jury, not during Morabito's testimony, but during Greenleaf's testimony.
>
> The identification testimony in this case constituted lay opinion testimony.  *Fomby,* 300 Mich.App at 50. MRE 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  In *Fomby,* this Court cited federal case law that "the issue of whether the defendant in the courtroom was the person pictured in a surveillance photo was a determination properly left to the jury." *Fomby,* 300 Mich.App at 52. In such a situation, there was no reason to believe that the witness who offered the identifying testimony was "more likely to identify correctly the person than is the jury."  *Id.* (internal quotation marks omitted).  "[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v. Drossart*, 99 Mich.App 66, 80; 297 NW2d 863 (1980).

> In denying defendant's motion for new trial, the trial court noted: During [Morabito's] investigation of the subject crimes, he requested Home Depot to give him a refund history regarding defendant, as well as the surveillance video of who actually sought a refund with Hayes's identification....At the trial, he identified defendant as the person in the video who was requesting the refund with Hayes's identification.
>
> The Court is not convinced that Det. Morabito invaded the province of the jury.  Instead, the Court opines that his testimony was rationally based on his perception of the witness.  MRE 701.  We agree that Morabito's observations did not invade the province of the jury. Importantly, Morabito did not watch the video while testifying and did not identify defendant in the video for the jury.  Instead, Morabito simply testified that he observed defendant in a video provided by Greenleaf that showed defendant returning items at the Home Depot with Hayes' driver's license.  Morabito offered his own observation as an explanation for how he conducted his investigation.  Even if Morabito's testimony was impermissible, reversal is not warranted where the error was not outcome determinative.  MCL 769.26; MCR 2.613(A); *People v. Feezel,* 486 Mich. 184, 192; 783 NW2d 67 (2010).  Here, the evidence of defendant's guilt was overwhelming. Defendant was arrested with Hayes' driver's license in his wallet. Aside from the video, there was documentary evidence that the victim's driver's license had been used to return goods to the Home Depot on September 2, 2011.

*People v. Richardson*, 2016 WL 1680392, at *3.

The Michigan Court of Appeals reasonably found that the testimony was rationally based on Detective Morabito's perception of the witness.  When petitioner was arrested by Detective Morabito, while leaving the store, petitioner

had the victim's identification on his person.  The video, the ID, and the

transaction identified petitioner regardless of Detective Morabito's testimony.

Petitioner's identity in the video was based on the additional evidence.  Morabito's

testimony did not invade the province of the jury.  He solely testified to the

observations that he made while conducting his investigation.

Errors in the application of state law, especially rulings regarding the

admissibility of evidence, are usually not questioned by a federal habeas court.

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Spalla v. Foltz*, 615

F. Supp. 224, 234 (E.D. Mich. 1985).  In addition, federal habeas courts "'must

defer to a state court's interpretation of its own rules of evidence and procedure'

when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.

2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  The Michigan

Court of Appeals concluded that Detective Morabito's testimony was permissible

lay opinion under state evidentiary law.  This Court sitting in federal habeas review

may not conclude otherwise, thus, petitioner is not entitled to habeas relief on his

claim that Detective Morabito's testimony was impermissible lay opinion

testimony.  *See Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011).

Richardson is not entitled to relief on his first claim.

**B.     Claim # 2. The improper jury instruction claim.**

Richardson contends that the trial court judge misspoke when giving an additional jury instruction pertaining to petitioner's parole status.  Prior to the jury instructions, trial counsel and the prosecutor agreed that two additional instructions would be given to explain the circumstances pertaining to Richardson's arrest and his choice to appear for trial in jail clothing.  Richardson's parole status had been disclosed at trial.  He contends that the instruction as given erroneously instructed the jury to utilize his parole status, as an absconder, to determine whether he is likely to commit crimes.

Habeas relief on an improper jury instruction is only warranted when, considering it within the context of the trial record and other instructions as a whole, the trial was rendered fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the troubled instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law.  *Henderson v. Kibbee*, 431 U.S.

145, 154-155 (1977).  Further, any ambiguity, inconsistency or deficiency in a jury

instruction does not by itself necessarily constitute a due process violation.

*Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).

In his habeas petition, petitioner cites to the transcript and contends that the

Court misspoke:

> So, I've crafted the first one to try and deal with the
>
> testimony regarding --
>
> - during the trial concerning defendant's status as a
> parole absconder, indicating to the jury if they believe
> this evidence, they can consider it only to the extent that
> it provides the legal basis for defendant's arrest on
> September 10, 2011. I believe that's why it was offered.
>
> Then I've concluded (sic) some cautionary language that it
> shouldn't be considered for any other purposes, for example
> they shouldn't decide that it shows the defendant is a bad
> person or he's likely to commit crimes.
>
> They must not convict the defendant here because he's on
> parole and/or is a parole absconder. (T 10-25-2012, p 52).

The purpose of the instruction was to benefit Mr. Richardson. When the instruction

was read, it came out differently, and contained the line:

> For example, you must decide that it shows that the defendant
> is a bad person or that he is likely to commit crimes. (T 10-25-
> 2012, p 99).

(ECF 1, PageID.13).

The Michigan Court of Appeals rejected petitioner's claim finding that there

was a transcription error that had been corrected before petitioner's motion for a

new trial.  The correction reflects what was actually said to the jury.

> You've heard testimony during the trial concerning the
> defendant's status as a parole absconder. If you believe
> this evidence, you may only consider it to the extent it
> provides a legal basis for the defendant's arrest on
> September 10, 2011. You must not consider this evidence
> of any other purpose. For example, *you must decide that
> it shows that the defendant is a bad person* or that he is
> likely to commit crimes. You must not convict the
> defendant here because he is on parole and/or because he
> is a parole absconder. All the evidence must convince
> you beyond a reasonable doubt that the defendant
> committed the alleged crimes, or you must find him not
> guilty. [Emphasis added.].

> At the hearing on defendant's motion for new trial, the
> prosecutor indicated that a corrected transcript had been
> filed that indicated a transcription error. Appellate
> counsel had not been served with the amended transcript
> but acknowledged that "obviously, if it's different, if it's
> the instruction he said he was going to give, then I, then
> that issue is pretty much gone." In denying defendant's
> motion for a new trial, the trial court noted that the issue
> "is moot inasmuch as the transcript was corrected to
> reflect what the Court actually stated, which meant that
> the Court had not misspoken, but instead had given a
> proper jury instruction."

*People v. Richardson*, 2016 WL 1680392, at *4.

With respect to Richardson's second claim, the Michigan Court of Appeals

reviewed the record and concluded that the trial court's statement was mis-

transcribed, noting that there was no evidence that the jury was received an improper instruction on petitioner's parole status.

Indeed, the record indicates that the trial court judge properly gave the agreed upon instruction as follows:

> You've heard testimony during the trial concerning the defendant's status as a parole absconder. If you believe this evidence, you may only consider it to the extent it provides a legal basis for the defendant's arrest on September 10, 2011. You must not consider this evidence of any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes.

(ECF 13-14, PageID.710).

Richardson's claim is moot inasmuch as the corrected transcript reflects what the Court actually stated during the jury instruction pertaining to his parole status, and this transcript does not support Petitioner's contention. Therefore, he is not entitled to habeas relief on his second claim.

**C.   Claim # 3. Right to be present during a critical stage of the proceedings.**

Richardson alleges that he was not present during a critical stage of the proceedings when the jury asked some questions during their deliberations, which were addressed by the Court in chambers with both counsel present. (ECF No. 13-16, PageID.838-840). He further contends that there is no record that he was present, and that jury re-instruction is a critical stage of the proceedings.

15

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, the U.S. Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow.'" *Cathron v. Jones*, 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106-107 (1934); *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)); *see also United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005) (citing Supreme Court authority and finding that a defendant's absence from the re-reading of previously given jury instructions did not thwart a fair trial). A defendant's presence at a hearing is "largely a matter of form" when a defendant's lawyer is present at proceedings which raise largely legal issues. *Cathron*, 190 F. Supp. 2d at 1001-1002 (quoting *Fisher v. Roe*, 263 F.3d 906, 916 (9th Cir. 2001)).

The Michigan Court of Appeals rejected petitioner's claim as follows:

> At the hearing on defendant's motion for new trial, the trial court noted that off-record discussions that were later placed on the record was standard and that defendant never voiced an objection. We agree. Although the conference regarding how to answer the questions may have been held in chambers and without defendant present, the entire matter was placed on the record and any objection was conspicuously absent. Moreover, defendant does not claim that the instructions, as given, were erroneous.

*People v. Richardson*, 2016 WL 1680392, at *6.

16

Petitioner's claim fails for two reasons.  First, he has offered this Court no evidence that the trial court purposefully excluded him from attending this conference.  *See e.g. Cardinal v. Gorczyk*, 81 F.3d 18, 20 (2d Cir. 1996).  More importantly, petitioner was not deprived of due process by his absence from the in-chambers conference on the issue of how to respond to the jurors' questions, because jury instruction conferences typically encompass purely legal issues and are attended only by the judge and counsel without the parties being present.  *See Larson v. Tansy*, 911 F.2d 392, 395 (10th Cir. 1990); *Schad v. Schriro*, 454 F. Supp. 2d 897, 950-51 (D. Ariz. 2006).  Likewise, a criminal defendant's absence from an in-chambers conference in which the trial court and counsel discuss how to respond to a deliberating jury's question does not violate a criminal defendant's right to be present.  *See Buell v. Mitchell*, 274 F.3d 337, 363-64 (6th Cir. 2001). This is particularly so where the defendant's counsel agrees to the answer given to the jury, as was the case here.  *Id.*  Richardson is not entitled to habeas relief on his third claim.

### D.    Claim # 4.  Inaccurate information in the pre-sentence report.

Richardson contends that the pre-sentence report contains inaccurate information pertaining to a retail fraud committed at a Lowes store in Warren, Michigan, on September 10, 2011.  His conviction stems from the use of a stolen ID to return merchandise at a Home Depot store on September 2, 2011.

There is no federal constitutional right to a pre-sentence investigation and report. *See Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006); *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). Therefore, the mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process such that it entitles a petitioner to habeas relief. *Allen*, 156 F. Supp. 2d at 797. Moreover, because the federal constitution does not require a state court to prepare or consider a pre-sentence report, petitioner had no federal constitutional right to review any such report prior to sentencing. *Bridinger*, 429 F. Supp. 2d at 909.

To the extent that petitioner claims that the trial court failed to correct the inaccuracies in his pre-sentence report, in violation of Mich. Ct. R. 6.429, this would be non-cognizable in federal habeas review, because it involves an issue of state law. *See e.g.*, *Koras v. Robinson*, 257 F. Supp. 2d 941, 955 (E.D. Mich. 2003); *aff'd in part and rev'd in part on other grounds*, 123 Fed. Appx. 207 (6th Cir. 2005).

More importantly, even where there is an alleged factual inaccuracy in a pre-sentence report, a court need not resolve the dispute when the information is not relied on in arriving at the sentence that was imposed. *See Warren v. Miller*, 78 F. Supp. 2d 120, 131 (E.D. N.Y. 2000). Although a criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of

constitutional magnitude," *see Roberts v. United States*, 445 U.S. 552, 556 (1980), in order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false.  *See Siebert v. Jackson*, 205 F. Supp. 2d 727, 731 (E.D. Mich. 2002).

Here, there is no evidence that the trial court relied on allegedly incorrect information contained within the pre-sentence report in sentencing Richardson.  A habeas petitioner is not entitled to relief on his claim that a pre-sentence investigation report contained inaccurate information where there is no indication that the sentencing judge relied on this information at the time of sentencing.  *See Draughn v. Jabe*, 803 F. Supp. 70, 80 (E.D. Mich. 1992).

Furthermore, the Michigan Court of Appeals found that petitioner waived this issue by failing to object to the allegedly inaccurate information at the time of sentencing.

> Additionally, although a defendant may object to "any information in the presentence report on the basis of accuracy and relevancy," *id.*, the sentencing transcript reveals that both defendant and his attorney reviewed the PSIR, and, although defendant objected to scoring of certain offense variables, neither defendant nor his attorney challenged description of the offense.  As such, defendant appears to have waived any other challenges to the report.  Defendant's failure to raise the issue, coupled with the fact that a PSIR may contain information regarding uncharged offenses, supports the trial court's decision not to allow a correction.

*People v. Richardson*, 2016 WL 1680392, at *6.

Petitioner is not entitled to habeas relief on his fourth claim.

**E.      Claims ## 5, 7, 9, 10, 11, 12, and 14.  The defaulted claims.**

Richardson alleges in his fifth claim that his due process rights were violated when he was not read his *Miranda* rights or fingerprinted upon arrest.  In his seventh claim, he alleges that the trial court committed reversable error by allowing an illegal arrest to stand and by failing to bring petitioner before a magistrate judge for arraignment within 100 days of arrest.  In the ninth claim, he claims that he was denied his right to a bench trial.  In his tenth claim, he contends that his Due Process rights were violated under the Sixth and Fourteenth Amendments when the judge's father came out of retirement just to deny his motion.  In the eleventh claim, Richardson asserts that the prosecutor's withholding of three (3) videos constituted a *Brady* violation.  In the twelfth claim, he posits that shackling during trial violated his due process rights.  In the fourteenth claim, he says that his due process rights were violated when he was detained 30 days before his arraignment.

Stewart (alternately "Respondent") argues that these claims are procedurally defaulted because the Michigan Court of Appeals found the claims were not properly briefed and thus were abandoned.

The Michigan Court of Appeals rejected petitioner's claims because he failed to offer any citations or caselaw in support of his claim, or were meritless as follows:

> We have reviewed defendant's Standard 4 Brief, in which he raises a significant number of issues on appeal. Many of these issues are not properly briefed or completely lacking in merit. Defendant's claims that he was not advised of his *Miranda* rights, was not fingerprinted, was not provided discovery, was not timely arrested, was denied the "right" to a bench trial, was improperly shackled during trial, and nepotism do not warrant any discussion. "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham v. City of Detroit*, 355 Mich. 182, 203; 94 NW2d 388 (1959) (internal citations omitted). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v. Kelly*, 231 Mich.App 627, 640–641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v. Thompson*, 261 Mich.App 353, 356; 683 NW2d 250 (2004). We briefly address only two of the issues raised—ineffective assistance of district court and trial court counsel as well as a violation of his right to a speedy trial.

*People v. Richardson*, 2016 WL 1680392, at * 7.

Under Michigan law, a party who fails to develop any argument or cite any authority in support of his claim waives appellate review of the issue. *People v. Griffin*, 235 Mich. App. 27, 45 (1999). "A party may not merely state a position

and then leave it to [the Michigan Court of Appeals] to discover and rationalize the basis for the claim." *Id.* A state court conclusion that an issue was waived is considered a procedural default. *See e.g.*, *Shahideh v. McKee*, 488 Fed. Appx. 963, 965 (6th Cir. 2012).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Richardson raised his fifth, seventh, ninth, tenth, eleventh, twelfth, and fourteenth claims in his Standard 4 *pro per* brief that he submitted in addition to

the brief submitted by appellate counsel.[3]  He has offered no reasons for his failure to properly brief these claims.  Because he has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.  Additionally, Richardson has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his defaulted claims as a ground for a writ of habeas corpus in spite of the procedural default.  Because he has not presented any new reliable evidence that he is innocent of these crimes, petitioner's claims are procedurally defaulted.  *Pearl v. Cason*, 219 F. Supp. 2d 820, 828 (E.D. Mich. 2002). Richardson is therefore not entitled to habeas relief on his procedurally defaulted claims.

## F.     Claim # 8.  The Speedy Trial Claim.

Richardson contends that his right to a speedy trial was violated because he was brought to trial six months after arrest, in violation of the 180-day rule set forth in Mich. Comp Laws § 780.131(1) and Mich. Ct. R. 6.004(d).

Petitioner is not entitled to habeas relief on his claim that he was deprived of his right to a speedy trial in violation of Michigan's 180-day rule set forth in Mich.

---

[3] *See* Defendant-Appellant's Supplemental Standard 4 Brief, ECF 13-19, PageID.1093-1126. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry*, 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

Comp Laws § 780.131(1) and Mich. Ct. R. 6.004(d) because it is essentially a state law claim. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004). A violation of a state speedy trial law by state officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition. *Burns*, 328 F. Supp. 2d at 722 (citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Wells v. Petsock*, 941 F.2d 253, 256 (3rd Cir. 1991)). Petitioner's allegation that the State of Michigan violated its own 180-day rule would therefore not entitle him to habeas relief. *Id.*

To the extent that Richardson is claiming that he was denied his Sixth Amendment right to a speedy trial, his claim is without merit. The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from

presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial." *Id.* 505 U.S. at 652, n. 1; *United States v. Brown*, 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

Petitioner was not arraigned on this offense until April 24, 2012. Petitioner went to trial on October 24, 2012, some six months later. Although an arrest warrant had been issued for petitioner prior to his arraignment, this would not trigger the right to a speedy trial.[4] The Supreme Court noted that it is "[e]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971). Therefore, although the invocation of the Speedy Trial Clause of the Sixth Amendment need not await indictment, information or other formal charge, the provision of the Speedy Trial Clause does not reach to the period prior to arrest. *Id.*

---

[4] Petitioner was arrested in October 2011 as a parole absconder. However, he was not incarcerated from December 22, 2011 until April 24, 2012, at which time he was violated on his parole. (ECF 13-8, PageID.327-328). Due to petitioner's status as a parolee, the prosecution's decision to amend the complaint, and several adjournments due to motions filed by petitioner, he was not bound over to the Macomb County Circuit Court until May 24, 2012, for charges pertaining to the identity theft. (ECF No. 13-9, PageID.356-358).

There was only a six-month delay between petitioner's arraignment and trial, which is not presumptively prejudicial. *See United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (nine-month delay between indictment and trial not presumptively prejudicial). A delay of less than six months is not an "uncommonly long" delay. *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006). Because the delay was not uncommonly long and was less than one year, petitioner does not meet the threshold requirement to obtain relief on a Speedy Trial claim. *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (noting that "[t]he length of the delay is a threshold requirement"). Petitioner has also failed to establish that his six-month delay was presumptively prejudicial, therefore, it would be unnecessary for this Court to inquire into the other *Barker* factors. *Id.* Petitioner is not entitled to habeas relief because the six-month delay between his arraignment and his trial is not presumptively prejudicial. *See Wilson v. Mitchell*, 61 Fed. Appx. 944, 946 (6th Cir. 2003).

### G.    Claims # 6 and 13.  Ineffective assistance of counsel claims.

Richardson alleges he was denied the effective assistance of trial counsel. To prevail on his ineffective assistance of counsel claims, he must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for

claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

In his sixth claim, petitioner alleges that trial counsel was ineffective for allowing the district court to amend the complaint and because his counsel failed to challenge Det. Morabito's stop. The Michigan Court of Appeals rejected this claim finding "[a] court may amend an information at any time before, during or after trial." *People v. Richardson*, 2016 WL 1680392, at *7 (citing to *People v. Goecke*, 457 Mich. 442, 460 (1998)). Trial counsel was not ineffective for failing to raise a futile objection. *See U.S. v. Johnson*, 9 Fed. Appx. 373, 374 (6th Cir. 2001) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)).

The Michigan Court of Appeals further rejected petitioner's contentions finding that the circumstances justified the stop as follows:

> Morabito testified that he became suspicious when a car pulled into the Home Depot parking lot and parked far from the entrance to the store, even though the parking lot was not crowded. Morabito noted that the three occupants were preoccupied with Morabito and turned around to look at him several times. After he parked his car out of sight, Morabito noticed that two of the three occupants exited the car to go into the store. In his experience, this was suspicious of criminal behavior. Morabito then approached the lone occupant and noticed that the occupant was trying to hide a bag of plumbing supplies. Defendant and the other passenger exited the store. When defendant saw Morabito, he immediately went back into the store. Under the totality of the

27

> circumstances, Morabito reasonably believed that
> criminal activity was afoot and was justified in stopping
> defendant. Counsel were not ineffective for failing to
> bring a motion for an evidentiary hearing.

*People v. Richardson*, No. 314245, 2016 WL 1680392, at *8 (Mich. Ct. App. Apr. 26, 2016).

An officer may briefly detain a person if the officer observes articulable facts that would warrant a reasonable officer to believe that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Det. Morabito observed that the car parked far from the store, even though it was not crowded. The car's occupants repeatedly looked in Morabito's direction. When Morabito pretended like he was leaving, only two of the three occupants exited the car. The third individual attempted to hide a bag of "high-end plumbing supplies" when Morabito approached the car. When Morabito approached petitioner and the other occupant of the car exiting the store together, petitioner turned around and went back inside, yet the other occupant kept going, saying they were not together. (ECF 13-13, PageID.554-560). Due to the unusual behavior in the parking lot, the other suspects' efforts to avoid police investigation, and petitioner's effort to evade contact, it was reasonable for Morabito to believe that petitioner was engaged in criminal activity, which justified the stop.

A lawyer does not perform deficiently or prejudice his client by failing to raise frivolous objections. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir.

2000); *Strickland*, 466 U.S. at 694.  Counsel was not ineffective for failing to make a futile challenge to the stop.  *See id.*  Because the findings by the Michigan Court of Appeals were not contrary to or an unreasonable application of clearly established federal law, petitioner is not entitled to relief on his sixth claim.

In his thirteenth claim, Richardson alleges that trial counsel was ineffective by failing to investigate and interview potential witnesses.  However, he does not identify any witnesses that trial counsel failed to call or investigate.  His claim is conclusory.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Richardson also alleges that trial counsel failed to effectively cross-examine and impeach the prosecution witnesses.  He challenges Det. Morabito's testimony that Mr. Hayes' van was broken into and his ID stolen, assuming that petitioner was the individual who stole the ID.  Richardson indicates that Hayes' trial testimony was that he was conducting business at various banks and lost the ID. The record reflects that Hayes testified during the preliminary examination that he thought his driver's license was in his work van but after a search, could not find the license.  (ECF 13-7, PageID.286).  Hayes testified at trial that he could not find his license, searched some banks where he conducted business, but had no idea where he lost it.  Hayes testified that he did not know what happened to his license.

29

(ECF 13-13, PageID.604).  Clearly, Hayes lost his license.  Petitioner does not indicate how counsel failed to cross-examine and impeach this witness or how further questioning would have aided his defense.

Richardson also asserts that trial counsel failed to raise or challenge the arraignment.  He does not identify what was wrong with his arraignment or how trial counsel's challenge to the arraignment would have made a difference in the outcome of the case.  Because petitioner's claim is conclusory and unsupported, he is not entitled to relief.

Richardson finally alleges that either trial counsel or appellate counsel failed to request an evidentiary hearing regarding the video evidence under *People v. Ginther*, 390 Mich. 436 (1073).  Petitioner contends that the video evidence was inadmissible due to a lack of a foundation.  Petitioner's ineffective assistance of counsel claim fails because he has failed to show that a proper foundation for the admission of this evidence pursuant to Mich. R. Evid. 406 was not, or could not have been, made.  *See Bramblett v. True,* 59 Fed. Appx 1, 10 (4th Cir. 2003).  In light of the fact that none of petitioner's underlying ineffective assistance of trial counsel claims have any merit, he is unable to establish that he was prejudiced by appellate or trial counsel's failure to properly move for a *Ginther* hearing.  *See e.g.*, *Davis v. Booker*, 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other*

*grounds*, 589 F.3d 302 (6th Cir. 2009).  Petitioner is not entitled to relief on his

thirteenth claim.

###    H.    Claim # 15.  The jurisdictional claim.

Richardson alleges that the Macomb County Circuit Court never acquired

jurisdiction over his criminal case because of defects in the criminal complaint

where the complaint was not properly sworn to by the complaining witness.

Although petitioner's claim is unexhausted, this Court may deny a claim on

the merits without considering exhaustion when it is more efficient to do so.  28

U.S.C. § 2254(b)(2) (stating that a habeas petition may be denied on the merits

despite the failure to exhaust state court remedies); *see also Hudson v. Jones*, 351

F.3d 212, 215-16 (6th Cir. 2003).

The determination of whether a state court is vested with jurisdiction under

state law over a criminal case is a function of the state courts, not the federal

courts.  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Daniel v.

McQuiggin*, 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009).  The Sixth Circuit has

noted that "[a] state court's interpretation of state jurisdictional issues conclusively

establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*,

27 Fed. Appx. 473, 475 (6th Cir. 2001).  Richardson's claim that the trial court

lacked jurisdiction to try his case raises an issue of state law, because it questions

the interpretation of Michigan law, and is therefore not cognizable in federal

habeas review.  *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis*, 23 Fed. Appx. 259, 266 (6th Cir. 2001) (district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).

In any event, petitioner's jurisdictional claim that the complaint was not based on probable cause is meritless.  "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."  *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); *see also Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886).  The Supreme Court has held that "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."  *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct."  *United*

*States v. Crews*, 445 U.S. at 474.  Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest.  Thus, the mere fact that petitioner may have been arrested without probable cause or on an invalid warrant would not prevent him from being prosecuted and convicted of this offense.

To the extent that Richardson's claim that the felony complaint was jurisdictionally defective is based on state law, it is not cognizable in federal habeas corpus review.  *See Hogan v. Ward*, 998 F. Supp. 290, 295 (W.D.N.Y. 1998); *see also Lane v. Booker*, 2006 WL 288071, *1 (E.D. Mich. Feb. 6, 2006). Furthermore, a criminal court in Michigan does not lose jurisdiction over a criminal case merely because the criminal complaint was somehow defective.  *See People v. Payne*, 2000 WL 33400212, *3 (Mich. Ct. App. Nov. 28, 2000); *People v. Mayberry*, 52 Mich. App. 450, 451 (1974) (both citing *People v. Burrill*, 391 Mich. 124, 133 (1974)).

Richardson's related claim that the information was defective is likewise not a jurisdictional defect.  Once jurisdiction vests in the circuit court, it "is not lost even when a void or improper information is filed."  *People v. Goecke*, 457 Mich. 442, 458-59 (1998).  Petitioner is not entitled to relief on his fifteenth claim.

## IV.  CERTIFICATE OF APPEALABILITY

Before petitioner may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because the Court has rejected petitioner's first through fourth, sixth, eighth, and thirteenth habeas claims on the merits, to satisfy § 2253(c)(2), petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).  When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, as the Court has done with petitioner's fifth, seventh, ninth, tenth, eleventh, twelfth and fourteenth, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.* at 484.

Given that the foregoing analysis of petitioner's claims was fairly straightforward, the Court believes that no reasonable jurist would argue that petitioner should be granted habeas relief on his claims.  Accordingly, a certificate of appealability will not issue from this Court.  *Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014).  However, if petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the petition for a writ of habeas corpus and **DENIES** petitioner a certificate of appealability.  Petitioner is granted leave to appeal *in forma pauperis.*

**IT IS SO ORDERED**.

Dated: September 28, 2020               s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States District Judge